STEINMANN v DILLON
STEINMANN v AUTO CLUB INSURANCE ASSOCIATION

Docket Nos. 239113, 239559. Submitted August 6, 2003, at Detroit. Decided
August 14, 2003, at 9:10 A.M.

Mishelle Steinmann was injured in an automobile accident and had
medical expenses paid on her behalf by the DaimlerChrysler Health
Plan (DCHP). Steinmann was also insured under a no-fault automo-
bile insurance policy by Auto Club Insurance Association (AAA) at
the time of the accident. Steinmann brought a third-party negli-
gence claim in the Tuscola Circuit Court against the owner and
driver of the other automobile involved in the accident, and DCHP
intervened in that action. The plaintiff settled the third-party claim,
and DCHP sought to recover the medical expenses it paid on the
plaintiff's behalf on the basis of a subrogation provision in its
administrative manual. (Docket No. 239113). The plaintiff filed a
declaratory judgment action against DCHP and AAA in the same
court, seeking a declaration regarding which insurer was responsi-
ble for paying the plaintiff's medical bills. (Docket No. 239559). In
Docket No. 239113, the court, Patrick R. Joslyn, J., granted DCHP's
motion for summary disposition, concluding that the plaintiff was
required to reimburse DCHP for medical expenses out of her settle-
ment. In Docket No. 239559, the court concluded that AAA was
required to reimburse the plaintiff for her payment to DCHP. The
plaintiff and AAA appealed, and the appeals were consolidated.

The Court of Appeals *held*:

The Michigan no-fault act, MCL 500.3103 et seq., bars recovery of
medical expenses from third-party tortfeasors arising out of the
ownership, maintenance, or use of a motor vehicle. MCL 500.3135.
The plaintiff's settlement proceeds, therefore, did not include com-
pensation for medical expenses. Pursuant to the plain language of
DCHP's subrogation provision, DCHP, as subrogee, stood in the shoes
of the subrogor, the plaintiff, and acquired no greater rights than
those possessed by the subrogor. Because the plaintiff could not
recover medical expenses from the third-party tortfeasors under
the no-fault act, DCHP cannot recover medical expenses from the
plaintiff's settlement absent a separate reimbursement provision.
The trial court's reliance on federal precedent in reaching its con-

clusion was misplaced because that decision is not binding and is factually distinguishable. The orders granting summary disposition in favor of DCHP and the plaintiff must be reversed.

Reversed.

*Cochran, Foley & Associates, P.C.* (by *Terry L. Cochran* and *Pamela Crnolatic*), for Mishelle Steinmann.

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Graham K. Crabtree* and *Thaddeus E. Morgan*), for the DaimlerChrylser Health Plan.

*Schoolmaster, Hom, Killeen, Siefer & Arne* (by *Elaine I. Harding*) and *John A. Lydick* for the Auto Club Insurance Association.

Before: DONOFRIO, P.J., and BANDSTRA and O'CONNELL, JJ.

O'CONNELL, J. In Docket No. 239113, plaintiff Mishelle Steinmann appeals as of right an order granting summary disposition in favor of intervening party-appellee DaimlerChrysler Health Plan (DCHP) pursuant to MCR 2.116(C)(10). In Docket No. 239559, defendant Auto Club Insurance Association (AAA) appeals as of right an order granting summary disposition in favor of plaintiff pursuant to MCR 2.116(C)(8)[1] and a declaratory judgment. The appeals were consolidated. We reverse in both docket numbers.

---

[1] In both cases, the trial court did not articulate on which subrule of MCR 2.116(C) summary disposition was appropriate. On the basis of the subrules cited by the moving parties, we conclude that the trial court granted summary disposition based on MCR 2.116(C)(10) in Docket No. 239113 and MCR 2.116(C)(8) in Docket No. 239559.

I

Plaintiff was injured in an automobile accident on January 5, 2000. At the time of the accident, plaintiff was a covered dependent under a medical insurance plan issued by DCHP.[2] Plaintiff was also insured under a no-fault automobile insurance policy issued by AAA. DCHP paid $14,319.79 in medical expenses on behalf of plaintiff as a result of injuries she sustained in the accident. Subsequently, plaintiff brought a third-party negligence action against the driver and owner of the other automobile involved in the accident.[3] The trial court allowed DCHP to intervene in this action (Docket No. 239113).

Plaintiff settled her third-party negligence lawsuit for $50,000. DCHP sought to recover $14,319.79 in medical expenses from plaintiff's settlement on the basis of a subrogation provision in its administrative manual. Plaintiff, naming DCHP and AAA as defendants, requested a declaratory judgment to resolve the issue of which insurer was responsible for paying plaintiff's medical bills (Docket No. 239559). In Docket No. 239113, the trial court granted DCHP's motion for summary disposition, ruling that plaintiff was required to reimburse DCHP for medical expenses out of her third-party tort settlement. In Docket No. 239559, the court concluded that AAA was required to reimburse plaintiff for plaintiff's payment to DCHP.

---

[2] DCHP is a self-funded employee health benefit plan created and administered pursuant to the Employee Retirement Income Security Act (ERISA), 29 USC 1001 et seq.

[3] The driver and owner of the other automobile involved in the accident were defendants Sarah Louise and Gary Dillon, respectively. They are not parties to this appeal.

II

We review de novo a trial court's grant or denial of summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. *Spiek, supra*. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The motion may be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Id.* (quotation omitted). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. *Downey v Charlevoix Co Bd of Co Rd Comm'rs*, 227 Mich App 621, 625; 576 NW2d 712 (1998). The pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on a motion brought under MCR 2.116(C)(10). *Id.* at 626; MCR 2.116(G)(5). When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), this Court "must consider the documentary evidence presented to the trial court 'in the light most favorable to the nonmoving party.' " *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 539; 620 NW2d 836 (2001), quoting *Harts v Farmers Ins Exchange*, 461 Mich 1, 5; 597 NW2d 47 (1999).

In Docket Nos. 239113 and 239559, plaintiff and AAA argue that the trial court erred in ruling that the subrogation provision in DCHP's administrative manual required plaintiff to reimburse DCHP for medical expenses out of her third-party tort settlement.

Thus, at issue is the interpretation of the plan agreement between plaintiff and DCHP. See *Yerkovich v AAA*, 461 Mich 732, 736; 610 NW2d 542 (2000). The administrative manual of DCHP's insurance plan contains the following provision:

*SUBROGATION*

*A. General*

In the event that an Enrollee receives services that are paid by the Program, or is eligible to receive future services under the Program, *the Program shall be subrogated to the Enrollee's rights of recovery against, and is entitled to receive all sums recovered from, any third party who is or may be liable to the Enrollee, whether by suit, settlement or otherwise.* An Enrollee shall take such action, furnish such information and assistance, and execute such documents as the Program may request to facilitate enforcement of the rights of the Program and shall take no action prejudicing the rights and interests of the Program. [Emphasis in original.]

Black's Law Dictionary (7th ed) defines "subrogation" as "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor" and, alternatively, as "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." A subrogee "stands in the shoes of the subrogor and

acquires no greater rights than those possessed by the subrogor." *Yerkovich, supra* at 737.

The Michigan no-fault act, MCL 500.3103 *et seq.*, bars recovery of medical expenses from third-party tortfeasors arising out of the ownership, maintenance, or use of a motor vehicle. MCL 500.3135. Plaintiff's settlement proceeds, therefore, did not include compensation for medical expenses. Plaintiff and AAA contend that because plaintiff could not recover medical expenses from the third-party tortfeasors under MCL 500.3135, DCHP is prohibited from recovering medical expenses from plaintiff's settlement because a subrogee cannot acquire greater rights than the subrogor. We agree.

An insurance contract should be read as a whole, giving meaning to all its terms. *Auto-Owners Inc Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). An insurance contract is clear if it fairly admits of but one interpretation. *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999). An insurance contract is ambiguous if, after reading the entire contract, its language can be reasonably understood in different ways. *Id.* Ambiguous terms in an insurance policy must be construed against the drafter and in favor of the insured. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41; 664 NW2d 776 (2003).[4]

The insurance contract in this case is not ambiguous. Reading the subrogation clause as a whole, because the "entitled to receive all sums recovered from . . . any third party" language is in the same sentence as the "shall be subrogated to the Enrollee's

---

[4] We note that the rule of reasonable expectation—that the policyholder has a right to coverage he could reasonably expect from reading the contract, see *Wilkie v Auto-Owners Ins Co*, 245 Mich App 521, 524; 629 NW2d 86 (2001)—was overruled in *Wilkie, supra* at 469 Mich 63.

rights of recovery against" language and because all the language is included under the "*SUBROGATION*" heading, the subrogation clause is narrow and limited to traditional subrogation. Consequently, DCHP only has subrogation rights and is not entitled to reimbursement from plaintiff's settlement because the plan does not provide DCHP with a right to reimbursement. As subrogee, DCHP is only entitled to recover what plaintiff is entitled to recover—because plaintiff cannot recover medical expenses, DCHP cannot recover. See *id.*

III

In granting defendant DCHP's motion for summary disposition, the trial court relied on *Ward v Wal-Mart Stores, Inc, Assoc Health & Welfare Plan,* 7 F Supp 2d 927 (WD Mich, 1998).[5] In *Ward,* the district court ruled that the defendant, a self-funded employee welfare benefit plan under the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.,* was entitled to reimbursement out of the plaintiff's third-party tort recovery for noneconomic damages that were suffered as a result of an automobile accident, not under the plan's subrogation provision, but under the plan's separate reimbursement provision. In that case, the plan's subrogation rights were limited to recovering against any "third party who may be liable for the amount of such benefits[.]" *Id.* at 930 (quotation omitted). The court held that because the plaintiff's third-party tort settlement could not include

---

[5] Federal district court decisions are not binding precedent. See *Jodway v Kennametal, Inc,* 207 Mich App 622, 630-631; 525 NW2d 883 (1994). In addition, *Ward* was reversed in part on other grounds in an unpublished decision, 194 F3d 1315 (CA 6, 1999).

reimbursement for medical expenses, the third-party tortfeasor was not a third party "who may be liable for the amount of such benefits covered or paid by the Plan." *Id.* Accordingly, the court held that the subrogation provision did not allow the plan to recover medical expenses from the plaintiff's settlement.

However, the district court further held that the plan could recover medical expenses from the plaintiff's third-party tort settlement on the basis of a separate reimbursement provision, which gave the plan "the right to . . . recover benefits previously paid by the PLAN" from third parties regardless of whether the payment is designated as payment for such damages including, but not limited, to pain and suffering, loss of income, medical benefits, or any other specified damages.[6] *Id.* at 930.

Here, the subrogation clause is limited and creates only subrogation rights for defendant DCHP. Because the "entitled to receive all sums recovered" language follows the subrogation language and is included under the subrogation heading, DCHP is not entitled to reimbursement from plaintiff's settlement. The plan simply does not contain a separate right to reimbursement.[7] See *Farm Bureau Mut Ins Co, supra; Wilkie, supra* at 469 Mich 62-63.

Reversed.[8]

---

[6] Judge O'CONNELL notes that public policy in Michigan prohibits recovery of medical expenses from third-party tortfeasors. See, e.g., MCL 500.3135 (the no-fault act). Therefore, reimbursement clauses like the one contained in *Ward, supra,* indirectly violate Michigan public policy concerning reimbursement of medical expenses from third-party tortfeasors. Logic implies that if one cannot directly recover medical expenses from third-party tortfeasors, one is not allowed to do so indirectly.

[7] In the present case, no separate reimbursement clause exists. Therefore, this issue is not properly before this Court.

[8] Because of our disposition of this case, it is unnecessary to reach the other issues raised on appeal.